**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NORA CANDELARIA,

     Plaintiff,

v.                                                                                    Civ. No. 18-725 WJ/GBW

MOLINA HEALTHCARE, INC., *et al.*,

     Defendants.

## ORDER DENYING EXTENSION OF CLASS CERTIFICATION DEADLINE

THIS MATTER comes before the Court on Plaintiff's Motion to Extend Deadline for Class Certification and All Subsequent Deadlines. *Doc. 34.* Having reviewed the motion and attendant briefing (*doc. 36*), and heard oral argument on the matter (*doc. 42*), the Court will DENY Plaintiff's Motion for the reasons that follow.

### I.     BACKGROUND

Plaintiff filed her complaint in this action, entitled "Original Class Action Complaint," on July 27, 2018. *Doc. 1.* It was initially characterized as a class action under Federal Rule of Civil Procedure 23, *see doc. 1* at 1, and neither party has at any time denied Plaintiff's original intent to move for class certification under Rule 23. The currently operative First Amended Class Action Complaint was filed on September 12, 2018. *Doc. 3.*

On November 28, 2018, the parties filed a Joint Status Report and Provisional Discovery Plan in which they proposed a motion for class certification deadline of June 1, 2019. *See doc. 18* at 1. This deadline was specifically discussed at the December 18, 2019 Rule 16 Scheduling Conference. *See doc. 21.* As the minutes to that conference reflect, the "Court expressed its concern with the lateness of June as the deadline for a motion for class certification." *Id*. The Court's concern arose from the reality that the nature of discovery can change dramatically when a case is certified as a class action. With such a late certification motion deadline, the parties would be using five months of discovery pre-certification and would only have two months left after the filing of the motion. Indeed, the parties would have even less time for post-certification discovery if the motion were opposed given time for briefing and decision. Nonetheless, both counsel expressed support for the later deadline. *Id*. Consequently, the "Court stated that it would adopt the proposed class certification deadline," but explicitly warned "that it would be unlikely to grant extensions." *Id*.; *see also doc. 22* at 1 ("the Joint Status Report, after consultation with the parties, is adopted as an order of the Court").

Five and a half months and the June 1 deadline came and went without any motion by Plaintiff to certify a class. Plaintiff's counsel was alerted to the missed deadline a month later, on July 1, 2019, during a teleconference with counsel for Defendants. *See doc. 34* at 7–8. On July 23, 2019, more than three weeks after that alert and more than fifty days after the deadline, Plaintiff filed the instant Motion to Extend

Deadline for Class Certification and All Subsequent Deadlines. *Id*. Plaintiff requested

that the deadline for the motion for certification be extended until 14 days after the

order deciding the Motion and further that the deadline for the close of discovery be

moved back such that it would be "in the same position … relative to the June 1, 2019,

deadline." *Id*. at 2. Even assuming an instantaneous ruling when the motion was fully

briefed after an ordinary briefing period under the local rules, Plaintiff's request would

have led to a certification motion deadline of September 3, 2019 and moving the close of

discovery back to November 3, 2019. The excuse for missing the deadline was a

"calendaring error in Plaintiff's counsel's office." *Id*. at 2. On this basis, Plaintiff argued

that she had satisfied the applicable standards for extension under both Rule 6 and Rule

16. *See id*. at 8–21. In addition, Plaintiff's counsel described ongoing discussions

following a late-May 2019[1] conference between counsel regarding a proposed

---

[1] Plaintiff states that this meeting took place on May 24, 2019. *See doc. 34* at 6. Defendants maintain that it in fact took place on May 28, 2019, *see doc. 36* at 8, and have attached both an affidavit and email evidence to that effect, *see. doc. 36-1* at 1–2; *doc. 36-2* at 2–3. Defendants also deny any allegation that Plaintiff was delayed thereafter by waiting for the proposed stipulation, which was emailed to Plaintiff's counsel on June 4, 2019, just seven days after the conference. *See doc. 36* at 8; *doc. 36-4* at 4–5. In fact, based on Defendants' email exhibits, it is clear that Plaintiff's counsel simply did not get around to reviewing the stipulation until late June. *See doc. 36-4* at 2–4. It does not appear that Plaintiff is arguing that the discussion over the stipulation delayed the filing of their certification motion. Indeed, Plaintiff's counsel concedes that he "planned internally to file the class certification motion near the end of the discovery period, which is currently August 1, 2019." *Doc. 34* at 4. Moreover, the entire email exchange took place subsequent to the June 1 class certification deadline, and the conference took place just four days prior to the deadline. *See doc. 34* at 6; *doc. 42* at 3. Certainly, if the stipulation discussions were the final piece to the puzzle of filing the certification motion, Plaintiff could have filed a motion to extend the deadline before it had passed. Consequently, the Court gives little weight to the issue of the proposed stipulation.

stipulation which could have impacted the planned class certification motion. *See id*. at 6.

Defendants filed a response in opposition on July 26, 2019, arguing that Plaintiff had satisfied neither Rule 6 or Rule 16 and citing examples of Plaintiff's "persistent, careless inattention to court-ordered deadlines." *See doc. 36* at 4. In particular, Defendants made reference to Plaintiff's "woefully deficient" written discovery responses. *Id*. at 4. For example, on May 20, 2019, Defendants had filed a motion to compel "meaningful and certified responses" to their interrogatories and requests for production. *Doc. 24* at 3. Although Plaintiff requested an extension to respond, *see doc. 29*, which was granted, *see doc. 30*, Plaintiff failed to file any response. Therefore, the Court granted Defendants' Motion to Compel Discovery and ordered Plaintiff to provide meaningful and certified responses to Defendants' written discovery requests no later than July 16, 2019. *See doc. 31*. In their response to the present Motion to Extend, however, Defendants assert that Plaintiff disobeyed the Court's Order by providing uncertified interrogatory responses. *See doc. 36* at 5. In addition, Defendants allege that Plaintiff's counsel have been unable to reach Plaintiff, who refused to appear for deposition. *See id*. Defendants urge the Court to deny any extension of deadlines on Plaintiff's behalf.

Plaintiff elected not to file a reply in support of her Motion to Extend. *See doc. 40* at 1 n.1. However, Defendants' Motion to Dismiss (*doc. 33*) and the related briefing

(*docs. 37, 38, 39, 41*) shed some additional light on the factual circumstances to which Defendants allude. Defendants filed a Motion to Dismiss the Complaint and for Sanctions on July 23, 2019, immediately prior to Plaintiff's filing her Motion to Extend. *See doc. 33.* In their motion, Defendants requested dismissal of the complaint "for failure to cooperate in discovery and for violating this Court's July 2, 2019 Order compelling discovery." *Id*. at 1. They proceeded to outline many of the facts contained in their response to the Motion to Extend, including Plaintiff's inadequate discovery responses, failure to comply with the order compelling discovery, and refusal to appear for her deposition. *See id*. at 2–4.

Plaintiff—or, more accurately, Plaintiff's counsel—responded to Defendants' Motion to Dismiss on August 6, 2019. *Doc. 37.* Plaintiff's counsel acknowledged for the first time that Plaintiff Candelaria "no longer wished to be the lead plaintiff in this case," *id*. at 2, a circumstance which was by no means made apparent in the Motion to Extend, *see generally doc. 34*.[2] Plaintiff's counsel then indicated their intent to file a Motion to Substitute as Lead Plaintiff by Friday, August 9, 2019. *See doc. 37* at 2. As of the date of this Order (almost fifty days later), no such motion has been filed. Plaintiff's counsel provided just under one page of legal argument in opposition to Defendants' motion, stating: "Plaintiff Candelaria does not oppose the dismissal of her individual

---

[2] The precise date of Ms. Candelaria's withdrawal is unclear. Plaintiff's counsel estimate in their response to the Motion to Dismiss that she made this decision in "mid- to late-July." *Doc. 37* at 4. Mr. Braziel was similarly unable to clarify the date at the motion hearing. *See doc. 42* at 4–5.

claims." *Id*. at 5.  However, Plaintiff's counsel alleged a duty on the part of the Court to protect the interests of absent class members and urged the Court to grant the supposedly forthcoming Motion to Substitute.  *See id*.

On Plaintiff's request, *see doc. 34* at 21, the Court held a telephonic motion hearing on Plaintiff's Motion to Extend on August 22, 2019.  *See doc. 42*.  Plaintiff's counsel acknowledged that Ms. Candelaria, the named Plaintiff, no longer wished to participate in the litigation.  *See id*. at 2.  In response to the allegations of misconduct raised in Defendants' response, Plaintiff's counsel was unable to dispute that Plaintiff's discovery requests were not certified.  *See id*.  The Court considers this failure a concession of the point.

## II.  LEGAL STANDARD

### A. <u>Applicable Rule</u>

Plaintiff seeks to extend the relevant deadlines under both Rule 6, *see doc. 34* at 8, and Rule 16, *see doc. 34* at 18.  The deadline of June 1, 2019 for Plaintiff to file a motion for class certification was contained in the Court's Order Setting Pretrial Deadlines and Briefing Schedule, *see doc. 22* at 1, as were the "subsequent [discovery] deadlines" that Plaintiff now seeks to extend, *see generally id*.  In requesting extension, therefore, Plaintiff must indeed satisfy the standard of Rule 16, which "specifically governs amendments to scheduling orders."  *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015).  It is less clear whether Plaintiff must also satisfy the standard of

Rule 6, which deals with extensions of time generally.  However, as explained below, the Court analyzes both and finds that Plaintiff fails to satisfy either one.

In *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014), the Tenth Circuit addressed the analogous situation in which a plaintiff moves to amend his complaint after the scheduling order deadline for such a motion.  Despite the existence of a specific procedural rule governing amendment, *see* Fed. R. Civ. P. 15(a), the Tenth Circuit held that parties moving to amend after the deadline in the scheduling order must satisfy both the Rule 15 requirements and Rule 16's good cause standard. *See Gorsuch*, 771 F.3d at 1240 ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed R. Civ. P. 16(b)(4) *and* (2) satisfaction of the Rule 15(a) standard.") (emphasis added). Therefore, the Court concludes that the Rule 16 "good cause" standard must be satisfied whenever parties seek to amend a deadline contained in a scheduling order.

Whether a party must *additionally* satisfy Rule 6 in seeking extension of a scheduled deadline is unclear.  Although the Tenth Circuit's ruling in *Gorsuch* requires plaintiffs moving for amendment after the deadline to satisfy both Rule 16 and Rule 15, it does not require them to satisfy Rule 6.  *See also Birch v. Polaris Indus.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015) (noting that the lower court's analysis, which included a consideration of "excusable neglect" under Rule 6, "differs—albeit marginally—from the procedure we outlined in *Gorsuch*").  However, the Tenth Circuit has not addressed

the particular context of motions to extend class certification or other discovery deadlines after the date set in the scheduling order has passed. To account for the possibility that satisfaction of Rule 6 is required in addition to satisfaction of Rule 16, the Court will address both rules.

### B. Rule 16(b)

Federal Rule of Civil Procedure 16(b) provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

There is scant case law from the Tenth Circuit applying the "good cause" standard under Rule 16(b)(4), and most of it relates specifically to untimely motions to amend the complaint. The Tenth Circuit has, however, provided a concise definition of good cause under Rule 16(b)(4): it "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished) (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)). *See also Gorsuch*, 771 F.3d at 1240 ("In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'") (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)); *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) ("good cause obligates the moving party to provide an adequate explanation for any delay") (citations omitted).

This definition accords with the weight of authority among other circuit courts, which have generally agreed that a finding of good cause under Rule 16(b)(4) depends primarily, or even solely, on the diligence of the party seeking extension. *See*, *e.g.*, *Destra v. Demings*, 725 F. App'x 855, 859 (11th Cir. 2018) (unpublished) (Rule 16(b)(4) "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension.") (quoting *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998)); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) ("In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment."); *Hussain v. Nicholson*, 435 F.3d 359, 367 (D.C. Cir. 2006) (Rogers, J., concurring) ("the primary consideration in determining whether the district court abused its discretion by refusing to reopen discovery is whether [the plaintiff] was diligent in conducting discovery within the schedule set by the district court"); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("a finding of 'good cause' depends on the diligence of the moving party"); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment"). Some circuits, while applying a substantially similar diligence analysis, also consider other factors. *See Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019) (applying four-factor test) (quotation and citation omitted); *Inge v. Rock Fin.*

*Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) ("Another relevant consideration is possible prejudice to the party opposing the modification.").

In this circuit, the appellate court "afford[s] 'wide discretion' to a district court's determination of whether good cause was shown under Rule 16(b)(4)." *Perez v. Denver Fire Dep't*, 724 F. App'x 646, 650 (10th Cir. 2018) (unpublished) (quoting *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009)).

### C. Rule 6(b)

Rule 6(b) provides the general standard for extending time of "an act [that] may or must be done within a specified time." Fed. R. Civ. P 6(b)(1). It reads as follows:

> When an act may or must be done within a specified time, the court may, *for good cause*, extend the time:
>
>   (A) With or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
>   (B) On motion made after the time has expired if the party failed to act because of *excusable neglect*.

Fed. R. Civ. P. 6(b)(1) (emphasis added). The applicable standard for extension under Rule 6(b) therefore depends on whether the request is made prior or subsequent to the deadline. In either case, a showing of good cause is required. *See Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (unpublished). However, if the request is made after the deadline has already passed, the moving party must also satisfy the

excusable neglect standard. *See id*. (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 873 (1990)).

It is difficult to determine, based on existing Tenth Circuit precedent, whether "good cause" has precisely the same meaning under Rules 16(b)(4) and 6(b)(1). There is some reason to believe that it does. In the unpublished *Herbert* opinion, the Tenth Circuit used the diligence standard propounded in *Gorsuch*, which was there applied explicitly to Rule 16, to define "good cause" under Rule 6. *See Herbert*, 678 F. App'x at 701 (quoting *Gorsuch*, 771 F.3d at 1240). There is also a generally recognized presumption that "the same term has the same meaning when it occurs … in a single statute." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007). On the other hand, this presumption is "not rigid," *id.*, and some courts have differentiated, holding that good cause under Rule 16(b)(4) is a more onerous standard than good cause under Rule 6(b). *See, e.g., McCann v. Cullinan*, 2015 WL 4254226, at *10 (N.D. Ill. July 14, 2015) (unpublished) (interpreting case law to find that the Rule 16 "good cause" burden is "much heavier" than in Rule 6). The Tenth Circuit has not addressed this distinction, although it has established that "good cause" under Rule 6(b) requires "*at least as much as would be required to show excusable neglect.*"[3] *Broitman v. Kirkland*, 86 F.3d 172, 175

---

[3] The relationship between good cause and excusable neglect in this circuit is, to say the least, difficult to understand. The Tenth Circuit has made it clear that "the two standards, although interrelated, are not identical." *Broitman v. Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996). However, it is not clear precisely what the difference may be, and explanations to date have been somewhat confusing. *See Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (unpublished) (quoting *Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004)) (discussing the distinction and characterizing good cause as "com[ing] into

(10th Cir. 1996) (quoting *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987)) (emphasis in original).  Moreover, under Rule 6(b) "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required." *Id.* (internal quotation and citation omitted).  For purposes of deciding the motion at hand, this Court need only conclude that good cause under Rule 16(b)(4) is *at least* as stringent a standard as good cause under Rule 6(b)(1).

In contrast, the standard for excusable neglect in this circuit has been more extensively described and applied.  Courts apply a four-factor test, considering: "(1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether that party acted in good faith." *Utah Republican Party*, 678 F. App'x at 701 n.2 (citing *Pioneer*

---

play in situations in which there is no fault—excusable or otherwise").  It is also puzzling why, contrary to the holdings of many other courts, *see McCann v. Cullinan*, 2015 WL 4254226, at *10 n.9 (N.D. Ill. July 14, 2015) (collecting cases), good cause should represent a *higher* standard than excusable neglect when excusable neglect is the additional step that late-filing parties must satisfy.  *See* Fed. R. Civ. P. 6(b)(1)(A).  To further complicate matters, one Tenth Circuit opinion referred to excusable neglect under Rule 6 and good cause under Rule 16 as "essentially the same standard," though it is uncertain whether the court was actually endorsing that comparison or simply paraphrasing the lower court.  *See Birch v. Polaris Indus.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015).  Until the Tenth Circuit clarifies the precise relationship between these three standards, this Court has no choice but to apply each of them in turn.

*Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993)) (quotation marks omitted).

### III. MOTION FOR CLASS CERTIFICATION DEADLINE

Plaintiff first requests an extension of the deadline to file a motion for class certification. The currently operative deadline of June 1, 2019 was adopted in the Court's Order Setting Pretrial Deadlines and Briefing Schedule. *See doc. 22* at 1. Therefore, Plaintiff must demonstrate good cause for extension under Rule 16(b)(4). As explained above, Plaintiff may also need to satisfy Rule 6(b), which deals with extensions of time generally. The Court here addresses both and finds that Plaintiff can satisfy neither.

### A. **Plaintiff Has Failed to Demonstrate Good Cause Under Rule 16(b)**

The good cause standard of Rule 16(b)(4) focuses on the diligence of the party requesting extension. Diligence in this context entails providing an "adequate explanation for any delay," *Husky Ventures*, 911 F.3d at 1020 (citation omitted), and showing that the deadline could not be met "despite [the movant's] diligent efforts," *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco*, 204 F.R.D. at 668).

The Court finds that the moving party in this case has demonstrated an almost exceptional lack of diligence in conducting discovery and working toward class certification. With respect to the missed class certification deadline, Plaintiff's only explanation is that counsel's office staff failed to calendar the deadline. *See doc. 34* at 4.

Plaintiff's counsel has certainly provided no reason why the deadline *could not* have been met despite their diligent efforts. Rather, at best, Plaintiff's counsel made a careless error, one which was not discovered until a month after the deadline when Defendants pointed it out, *see doc. 34* at 7, and which Plaintiff's counsel did not attempt to rectify until three weeks after that discovery, *see generally id*. Notably, Plaintiff's counsel also failed to advise the Court about Ms. Candelaria's decision to withdraw from the suit until their response to the Motion to Dismiss on August 6, 2019. *See doc. 37* at 2. If Plaintiff's counsel indeed knew about Ms. Candelaria's decision as of "mid- to late-July," *id*. at 4, their delay in notifying the Court and Defendants further weighs against a finding of diligence.[4]

The Tenth Circuit has held that "simple inadvertence or mistake of counsel … usually does not suffice" to demonstrate good cause. *Broitman*, 86 F.3d at 175. Along the same lines, a number of courts applying Rule 16(b)(4) have found that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *See*, *e.g.*, *Johnson*, 975 F.2d at 609 (citations omitted); *Hussain v. Nicholson*, 435 F.3d 359, 367 (D.C. Cir. 2006) (Rogers, J., concurring) (quoting *Johnson*, 975 F.3d at 609); *Rosario- Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (same); *Abraham v. WPX Prod. Prods., LLC*, 2016 WL 548251, at *15 (D.N.M. Jan. 25, 2016) (unpublished) (citation omitted);

---

[4] This conclusion follows even assuming that, as Plaintiff's counsel represents, they had no warning of Ms. Candelaria's intention to withdraw prior to that time. *See doc. 42* at 4 (discussion of this question at the motion hearing).

*Hess v. Salt Lake Cnty.*, 2016 WL 3039629, at *2 (D. Utah. Apr. 1, 2016) (unpublished)

(citation omitted); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998)

(citation omitted).  In *Pumpco*, which was quoted by the *Gorsuch* court to define the

standard for Rule 16(b)(4) "good cause," the District of Colorado also espoused this

view.  *See* 204 F.R.D. at 668.  In practice, this approach means that litigants who could

have met a deadline but failed to do so through simple attorney oversight or negligence

do not meet the good cause standard.  *See, e.g., Hess*, 2016 WL 3039629, at *2 (no good

cause where plaintiff failed to adequately examine the record prior to amendment

deadline); *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687–88 (D. Colo.

2000) (a delay in case research prior to moving to amend does not satisfy 16(b)(4) good

cause).

Such oversight may include calendaring errors.  "[E]ven under the less

demanding[5] 'excusable neglect' standard in Fed. R. Civ. P. 6(b)(1)(B), an attorney's

calendaring error will not ordinarily support a favorable outcome."  *Smith v. T. Marzetti

Co.*, 2019 WL 4044024, at *3 (W.D. Ky. Aug. 27, 2019) (unpublished) (citation omitted).

Indeed, most courts have declined to grant extensions in cases of "straightforward and

unjustified attorney deadline mis-calendaring."  *See Blazer v. Chrisman Mill Farms, LLC,*

---

[5] Despite the earlier-discussed uncertainty in the relationship between good cause and excusable neglect, the Tenth Circuit agrees unequivocally with the Western District of Kentucky court that Rule 6(b) "good cause" represents a higher standard than Rule 6(b) "excusable neglect."  *See Broitman v. Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996).

2018 WL 1089274, at *2 (E.D. Ky. Feb. 28, 2018) (unpublished) (collecting cases). *See also*

*Shorette v. Harrington*, 234 F. App'x 3, 4 (2d Cir. 2007) (unpublished) (citing *Silivanch v.*

*Celebrity Cruises, Inc.*, 333 F.3d 355, 356 (2d Cir. 2003)) ("the law office calendaring error

Shorette blames for his failure to follow the local rules does not constitute 'excusable

neglect'"); *O'Bryan v. Pier 1 Imps. (US), Inc.*, 2018 WL 1156515, at *2 (S.D. Cal. Mar. 5,

2018) (unpublished) (finding lack of diligence under Rule 16 where plaintiff missed

deadline due to calendaring error); *Vieira v. CertusBank Nat'l Ass'n*, 516 B.R. 66, 75–76

(Bankr. D.S.C. 2014) (applying Rule 16(b)(4) and finding that a calendaring error does

not constitute good cause); *Lucero v. Olivas*, 2015 WL 13658581, at *2 (D.N.M. Aug. 18,

2015) (unpublished) (finding defendants not diligent where they "failed, without

explanation, to calendar the deadline until more than a month after it had expired").

Although some of these opinions deal with excusable neglect rather than good cause,

the Tenth Circuit has stated that good cause, even under Rule 6(b), is a *more* demanding

standard than excusable neglect. *See Broitman*, 86 F.3d at 175. On the whole, therefore,

this Court finds these numerous and diverse cases persuasive.

Admittedly, the Supreme Court has made it clear that excusable neglect, at least,

is "not limited strictly to omissions caused by circumstances beyond the control of the

movant." *Pioneer*, 507 U.S. at 392 (finding that respondents' counsel were "remiss" in

failing to read a notice, but that their neglect was excusable). The same presumably

may hold true for Rule 16(b)(4) good cause.[6]  In some cases, therefore, the moving party may be able to demonstrate good cause despite one or more instances of negligence, provided that their overall conduct has been diligent.  For example, in *Pantages v. Cardinal Health 200, Inc.*, 2009 WL 10670297, at *2 (M.D. Fla. Apr. 13, 2009) (unpublished), the court mused that "a calendaring error causing a several month delay in requesting an extension of the expert witness deadline might not standing alone be sufficient to constitute good cause."  Nonetheless, the *Pantages* court granted a belated extension in large part because the missed deadline had been made "unreasonable" by the filing of an amended complaint.[7]  *Id*.  In essence, the court implied that the extension was entirely appropriate on its own merits.  Plaintiff also cites several cases applying the Rule 6(b) good cause standard for the proposition that a calendaring error constitutes good cause for extension of deadlines.  *See doc. 34* at 15–17.  These cases are distinguishable in important ways from Plaintiff's own circumstances.  In *Mohankumar v. Dunn*, 1999 WL 1253053, at *2 (D. Kan. Dec 22, 1999) (unpublished), for instance, the plaintiff made a one-day calendaring error, which the court characterized as an

---

[6] The Supreme Court's holding in *Pioneer* that excusable neglect is not limited to circumstances outside the movant's control would have no meaning if "good cause" under Rule 6(b) were so limited, as late-filing movants must *also* satisfy good cause.  Whether or not Rule 16(b)(4)'s good cause standard can be satisfied despite omissions within the movant's control depends on whether that standard is more stringent than the one in Rule 6(b), a question that has not been definitively answered in this circuit.  *See supra*, 10–11.

[7] The *Pantages* court also noted that "[e]ven though Plaintiff missed the deadline, upon discovering the error in calculating the deadline, Plaintiff promptly filed the instant motion requesting leave to serve the expert witness reports out of time."  *Pantages v. Cardinal Health 200, Inc*., 2009 WL 10670297, at *2 (M.D. Fla. Apr. 13, 2009).  This approach stands in contrast to the instant case where Plaintiff waited 23 days after being alerted to her failure to meet the certification motion deadline to request an extension.

"inadvertent and minor error" amounting to excusable neglect. This scenario is quite

different from Plaintiff's fifty-day tardiness. The Eleventh Circuit decision *Walter v.*

*Blue Cross & Blue Shield of Wisconsin*, 181 F.3d 1198, 1202 (11th Cir. 1999) comes closer to

supporting Plaintiff's position. There the court found that Rule 6(b) was satisfied where

counsel's secretary, who had just terminated her position at the office, failed to calendar

a motion to dismiss, and counsel inadvertently missed the response deadline and

caused a delay of one month. *Id*.

Even assuming that the Rule 16(b)(4) standard is no more stringent than the Rule

6(b)(1) standard, the Court is unpersuaded by Plaintiff's arguments. If extension were

permitted, the calendaring error in question would delay the entire case for a minimum

of ninety days, *see doc. 34* at 21, causing substantial prejudice to Defendants and efficient

judicial administration. This delay included a three-week period during which

Plaintiff's counsel was aware of the missed deadline, but did not file any motion or

other notice with the Court. And although Plaintiff was not obligated to file a reply to

her Motion to Extend, it is also worth noting that Plaintiff's counsel—for Ms. Candelaria

had by this time concededly withdrawn from the litigation—elected not to file one,

thereby declining to rebut any of Defendants' allegations concerning their discovery

misconduct.

Moreover—and crucially—Plaintiff was warned during the December 8, 2018

scheduling conference that the proposed class certification deadline was unusually late,

and that the Court would be "unlikely to grant extensions." *See doc. 21* at 1–2. The failure of Plaintiff's counsel to properly calendar or track the deadline is particularly remiss in light of this prolonged discussion and explicit warning. *See McCann*, 2015 WL 4254226, at \*9 (finding no good cause where the court "warned plaintiff's counsel that it was 'very disinclined' to move any dates," and plaintiff subsequently missed the deadline); *Bickler v. Senior Lifestyle Corp.*, 2010 WL 342584, at \*2 (D. Ariz. Jan. 28, 2010) (unpublished) (finding no good cause for extension where the court "stated in its order…that further extensions would not be granted absent truly extraordinary circumstances"). In addition, as Defendants have pointed out, *see doc. 36* at 9, Plaintiff herself proposed the June 1 deadline. The Court's adoption of that deadline should not have come as a surprise. In short, neither Plaintiff nor Plaintiff's counsel has provided an adequate explanation for the missed class certification deadline, nor can they demonstrate that they have been diligent in their efforts to meet it.

All the same, if Plaintiff's failure represented an isolated incident of negligence, the Court might yet be inclined, in its discretion, to find good cause and grant an extension. But the failure to file a class certification motion before the deadline is just one instance of carelessness in a pattern of conduct that has spanned several months. As early as May, Defendants were forced by Plaintiff's inadequate discovery responses to file a motion to compel. *See doc. 24*. Plaintiff requested an extension to respond but, in fact, failed to do so before the extended deadline. *See docs. 25, 26*. The Court

therefore assumed Plaintiff's consent to grant the motion, as permitted by the Local

Rules, and granted Defendants' motion. *See doc. 31.* Evidently, however, disposition of

the motion to compel did not resolve the issue, as Defendants contend that Plaintiff

once again failed to provide meaningful and certified responses as ordered by the

Court. *See doc. 36* at 5. Plaintiff's counsel have not disputed that they violated the

Court's Order, either by filing a reply to the Motion to Extend or during the August 22,

2019 motion hearing, *see doc. 42* at 2, 5. The Court therefore concludes that, rather than

notifying the Court about their difficulty in reaching Ms. Candelaria, Plaintiff's counsel

chose to violate the Court's Order and provide uncertified responses. In addition,

weeks prior to any notification that she had withdrawn as lead plaintiff, Defendants

were unable to depose Ms. Candelaria because she could not be contacted. *See doc. 36* at

4. Nor did Plaintiff's counsel, once they were aware of Ms. Candelaria's withdrawal in

mid- to late-July, notify the Court or defense counsel about this fact until August 6,

2019. *See doc. 37* at 2. Finally, Plaintiff's counsel indicated their intent over a month ago

to file a Motion to Substitute as Lead Plaintiff by Friday, August 9, 2019. *See doc. 37* at 2.

To date, they have not done so. This is not the first time that Plaintiff's counsel have

failed to file a document as promised, and it certainly does not speak to their diligence

in pursuing class certification in this suit.[8]

---

[8] This recitation does not even take into account the various minor transgressions and omissions by
Plaintiff's counsel, such as their initial misrepresentation to the Court that Defendants did not oppose
substitution of another plaintiff in Ms. Candelaria's stead, *see doc. 38*, or their apparently inaccurate

In assessing good cause, courts have consistently taken the moving party's

overall diligence into account. The Supreme Court observed in *Pioneer*:

> Because Congress has provided no other guideposts for determining what
> sorts of neglect will be considered "excusable," we conclude that the
> determination is at bottom an equitable one, taking account of *all relevant
> circumstances* surrounding the party's omission.

507 U.S. at 395 (emphasis added). In *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th

Cir. 2017), the Tenth Circuit applied Rule 6(b) to find no abuse of discretion where the

district court had denied extension based on a calendaring error. The *Perez* court noted,

however, that "[h]ad counsel's error been isolated, our decision might be different." *Id*.

Although these cases deal with excusable neglect rather than good cause, there is no

reason to suppose that the same reasoning does not apply to the more stringent good

cause standard. Indeed, in *Ruleford v. Tulsa World Publ'g Co.*, 266 F. App'x 778, 786 (10th

Cir. 2008) (unpublished), the Tenth Circuit found no good cause for extension under

Rule 6(b) where the party requesting extension was generally "dilatory in engaging in

discovery."

Courts in various circuits have approached Rule 16(b)(4) good cause in the same

manner, taking the requesting party's overall history of diligence or non-diligence into

account. *See, e.g., Ruales v. Spencer Sav. Bank*, 2019 WL 3416835, at *4 (D.N.J. July 26,

---

representation that "the parties are planning to take depositions in the next two weeks," *see doc. 34* at 11;
*doc. 42* at 3, or even their simple error as to the date of the conference with defense counsel, *see supra* note
2.

2019) (unpublished) ("a review of the record indicates that Plaintiff has actively litigated this matter, and does not indicate a pattern of undue delay or dilatoriness"); *Birdsong v. Unified Gov't of Wyandotte Cnty.*, 2016 WL 3855488, at *4 (D. Kan. July 15, 2016) (unpublished) (discussing plaintiff's history and pattern of missing deadlines in analyzing Rule 16(b) diligence); *McCann*, 2015 WL 4254226, at *9 (taking into consideration the fact that "Plaintiff's counsel has established a history of failing to comply with Court deadlines and orders"); *Abram v. City of Buffalo*, 2008 WL 5191675, at *8 (W.D.N.Y. Dec. 10, 2008) (unpublished) (noting that, as plaintiff had missed many deadlines, "it is unlikely that Plaintiff has broken from this pattern and diligently worked towards complying with the scheduling order"). This Court is persuaded by the weight of authority regarding Rule 16(b) good cause, particularly as it accords with the Tenth Circuit's approach to Rule 6(b) good cause. Therefore, the clear and persistent pattern of non-diligence on the part of Plaintiff's counsel weighs heavily against a finding of good cause for extension.

In short, whatever may be the precise meaning of diligence in the context of Rule 16(b)(4), Plaintiff and Plaintiff's counsel have by any metric failed to meet it. The Court finds no good cause for extension under Rule 16(b)(4).

**B. <u>Plaintiff Cannot Satisfy Good Cause or Excusable Neglect Under Rule 6(b)</u>**

In order to meet the Rule 6(b)(1) standard, a requesting party must show both good cause and excusable neglect. For essentially the same reasons discussed above,

Plaintiff has shown neither.

Because of the Court's determination that Plaintiff has not been diligent in conducting discovery or seeking class certification, the Court concludes that Rule 6(b) good cause is not satisfied. Although the exact equivalence of good cause under Rule 6(b) versus Rule 16(b) in this circuit is uncertain, *see supra* at 11, it is highly improbable that the two standards are wholly unrelated, or that Plaintiff's conduct relevant to Rule 16(b)(4) would not also bear on her satisfaction of Rule 6(b). In fact, there is reason to believe the standards are identical or at least highly related. *See Herbert*, 678 F. App'x at 701 (quoting *Gorsuch*, 771 F.3d at 1240) (applying the Rule 16(b)(4) diligence standard to determine Rule 6(b) good cause).

Moreover, parties filing subsequent to the Court-ordered deadline are also obligated to satisfy excusable neglect, which Plaintiff clearly cannot do. Applying the excusable neglect standard, the Court finds the following: (1) Defendants face substantial prejudice if the class certification deadline is extended; (2) the contemplated ninety-day delay would have a significant impact on judicial proceedings, particularly considering the time already wasted on Plaintiff's discovery misconduct; and (3) the delay was entirely within Plaintiff's reasonable control. While there is no reason to believe Plaintiff has acted in bad faith with respect to the request for extension, the Court finds that three of the four *Pioneer* factors weigh against extension. *See Pioneer*, 507 U.S. at 395.

In particular, "fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).[9] *See also Perez*, 847 F.3d at 1253 (citation omitted) ("The most important factor is the third; an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect."). In *Torres*, although three out of four *Pioneer* factors weighed in favor of finding excusable neglect, the district court abused its discretion by granting the extension because the third and most important factor weighed against it. *See* 372 F.3d at 1162–63 ("The reason for the delay here was simply that defense counsel confused the filing deadlines for civil and criminal appeals."). *Cf. Rachel v. Troutt*, 820 F.3d 390, 394–95 (10th Cir. 2016) (it was an abuse of discretion to deny an extension, requested *before* the deadline, where plaintiff could not by his diligence conduct timely discovery and "no one has questioned the presence of good cause."). Here, Plaintiff's only excuse for missing the deadline is counsel's failure to write it on the calendar. And this failure occurred notwithstanding the Court's expression of concern over the lateness of the proposed deadline and the warning that an extension would likely not be granted. The degree of fault may be debated, but there is no doubt about where the fault lies. Nor were Plaintiff's counsel

---

[9] The *Torres* court applied excusable neglect under Federal Rule of Appellate Procedure 4(b). *See id*. at 1160. However, it is well-established that the *Pioneer* standard also applies to Rule 6(b). *See, e.g., Panis v. Missions Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995).

noticeably prompt in attempting to correct their error. *See Hamilton v. Water Whole Int'l Corp.*, 302 F. App'x 789, 800 (10th Cir. 2008) (unpublished) ("Unlike defendants, who within one day of filing their mistaken motion discovered and corrected their error, forty-four days passed before plaintiffs discovered their error and attempted to file a new motion.").

Furthermore, "the determination whether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Torres*, 372 F.3d at 1162 (quoting *Pioneer*, 507 U.S. at 395). "A court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay) and whether the attorney attempted to correct his action promptly after discovering the mistake." *Jennings v. River*, 394 F.3d 850, 857 (10th Cir. 2005) (citation omitted). *See also Perez*, 847 F.3d at 1253 (citation omitted) ("Had counsel's error been isolated, our decision might be different, but it was not."). In *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir. 1988), quoted by Plaintiff to the effect that a calendaring mistake "could occur in any office, no matter how well run," the court also critically noted that "[c]ounsel's mistake was but a single incident, completely unintentional and not contumacious in nature. Further, when the mistake was discovered, counsel acted promptly."

The same unfortunately cannot be said for Plaintiff's error. The Court will not here repeat the recitation of Plaintiff's counsel's non-diligent behavior detailed in the

previous section.  It suffices to say that both Plaintiff and Plaintiff's counsel have demonstrated a consistent pattern of dilatoriness and delay in conducting this litigation and working toward class certification, and that the calendaring error was not an "isolated incident," *see Hancock*, 857 F.2d at 1396.  Consequently, the Court finds that the neglect in this instance was not excusable.

### IV.    SUBSEQUENT DISCOVERY DEADLINES

In requesting extension of "all subsequent discovery deadlines," *doc. 34* at 1, Plaintiff again seeks the extension of discovery deadlines set in a scheduling order. Therefore, Plaintiff must again satisfy Rule 16(b)(4)'s good cause standard, and may additionally be required to satisfy Rule 6(b).

As noted above, this extension request would move the deadline for discovery back into November.  For such an extension, Plaintiff would be required to show: (1) good cause under Rule 16(b)(4), and (2) good cause under Rule 6(b).  *See* Fed. R. Civ. P. 6(b)(1)(A) (no showing of excusable neglect required where the party requests extension *before* the deadline).  Although this request should be, and is here, considered separately by the Court, no extension is merited for substantially the same reasons outlined in the preceding section.  *See supra* Section III.  In addition, even if those same considerations did not apply to the subsequent discovery deadlines, there can be no serious argument that good cause for extending discovery exists without a single surviving claim.  All of Plaintiff's individual claims have been dismissed, *see doc. 43*, no Motion to Substitute

has been filed, and the requested extension of the class certification deadline has been denied.  Therefore, far from discerning good cause, the Court can see no cause whatsoever to extend the other discovery deadlines.

## V.     COURT'S DUTY TO PUTATIVE CLASS MEMBERS

During the motion hearing, counsel for Plaintiff urged the Court to consider its duty to the putative class members in ruling on the instant Motion to Extend.  *See doc. 42* at 4.  This alleged duty was not raised at any point in the Motion to Extend, *see generally doc. 34*, though it was briefly mentioned in Plaintiff's response to Defendants' Motion to Dismiss, *see doc. 37* at 5.  At the hearing, counsel for Plaintiff suggested that there was some authority for the proposition that the Court owed a duty to a putative class, but provided no actual citations.  *See doc. 42* at 4.  Similarly, in their response to the Motion to Dismiss, Plaintiff's counsel summarily stated the following: "As the Court is aware, Plaintiff's counsel and the Court both owe duties to protect the interests of absent class members."  *Doc. 37* at 5.  No further explanation or reference has since been provided.

Pursuant to Local Rule 7.3(a), "[a] motion, response or reply must cite authority in support of the legal positions advanced."  Plaintiff's counsel have not at any time cited authority for this legal argument, nor indeed did they raise it in their response to the instant motion.  Consequently, the Court need not consider it.  In any case, the

Court is aware of no authority that would oblige it to grant extension in this case despite all the considerations enumerated above.[10]

## VI.    CONCLUSION

Extension of Court-ordered deadlines "is by no means a matter of right," *see Eller v. Trans Union LLC*, 739 F.3d 467, 478 n.10 (10th Cir. 2013) (citation omitted), and counsel for Plaintiff have failed to show good cause or excusable neglect to justify the requested extensions.  For the foregoing reasons, Plaintiff's Motion to Extend Deadline for Class Certification and All Subsequent Deadlines (*doc. 34*) is DENIED.  Given the dismissal of the Plaintiff's individual claims (*see doc. 43*) and the lack of a timely class certification motion, it appears that any remaining claims are subject to dismissal without prejudice. Should Defendants agree, they shall file a motion to dismiss the case no later than October 11, 2019.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

[10] Under Federal Rule of Civil Procedure 23, a court has a duty to ensure that settlements, voluntary dismissals, and compromises are fair to putative class members.  *See* Fed. R. Civ. P. 23(e)(2).  To the extent that this rule is the basis for Plaintiff's argument, it does not extend to the instant motion for extension of deadlines.